MARGIE YAGER, Plaintiff-Appellee, v. ILLINOIS BELL TELEPHONE COMPANY, Defendant (Champaign Telephone Company, Inc., Defendant and Third-Party Plaintiff-Appellant; Champaign-Urbana Mass Transit District, Third-Party Defendant).

Fourth District   Nos. 4—95—0837, 4—95—0960 cons.

Argued June 11, 1996.—Opinion filed June 28, 1996.—Rehearing denied August 7, 1996.

Stephen W. Thomson (argued), of Thomson & Behr, P.C., of Edwardsville, for appellant.

John F. Bramfeld (argued), of Phebus, Winkelmann, Wong & Bramfeld, of Urbana, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 1993, plaintiff, Margie Yager, filed a complaint against defendant Illinois Bell Telephone Company, alleging negligence and seeking damages resulting from injuries plaintiff suffered in a fall. In June 1993, plaintiff amended her complaint, adding a negligence count against defendant Champaign Telephone Company (CTC). In May 1995, a jury returned a verdict for plaintiff and against CTC in the sum of $303,355.99 and entered judgment on the verdict following post-trial motions.

CTC appeals, arguing that (1) it had no duty to plaintiff; (2) assuming a duty existed, it did not breach a duty to plaintiff; and (3) any alleged violation of a duty by CTC did not proximately cause plaintiff's injury.

Because we agree with the first and third of CTC's arguments, we reverse.

## I. BACKGROUND

On February 8, 1993, Marion Clark and Lee Moore, employees of CTC, worked on some telephone equipment at the Champaign-Urbana Mass Transit District (MTD). The equipment was housed in a telephone equipment box (hereafter the box) located along a sidewalk in a poorly lit area inside the MTD garage. The box also contained a public address (PA) system and associated wires. Clark and Moore opened the single front door of the box, swinging it out past the edge of the sidewalk, into the bus parking area, and back against the wall, where they propped it open with orange safety cones. At this time, no buses were parked in the area next to the sidewalk.

Clark and Moore worked on the telephone system but did not work on or disturb the PA system. After completing their work, they

were unable to shut the box's door because a bus had parked next to the sidewalk. Moore testified that, before leaving the premises at about 10 a.m., he informed Colleen Hart, assistant to the MTD director of administration, that they had finished and had left the door open because of the parked bus. Hart did not recall whether Moore had told her the door was left open that day, but she testified that it was not unusual for CTC to request that she close the door when a bus was in the way.

On February 9, 1993, at about 6 a.m., as plaintiff was walking along the sidewalk inside the MTD garage, she tripped over a ball of wire and fell, breaking her arm and injuring her hip. At the time plaintiff fell, the box's door was closed. No one recalled seeing the wire between the time that Moore and Clark left on February 8, 1993, and the time plaintiff fell on February 9, 1993.

In June 1993, plaintiff filed a complaint alleging that CTC was negligent in performing its work. Specifically, plaintiff alleged that CTC negligently:

"A. Drooped wires across a designated walkway.

B. Failed to barricade off wires that were drooped across a designated walkway.

C. Failed to light or otherwise illuminate wires that were drooped across a designated walkway.

D. Failed to station a workman to warn people, such as the plaintiff, of the wires that were drooped across a designated walkway."

In January 1995, plaintiff amended her complaint to add allegations that, in the course of working on the box located on a designated walkway, CTC, through its employees, (1) caused or allowed wires from the box to remain on the walkway, thereby causing a tripping hazard; (2) failed to perform their work with reasonable skill and workmanship in that they caused or allowed wires from the box to remain upon the walkway thereby causing a tripping hazard; (3) failed to adequately warn and alert the plaintiff and her employer that they had left wires from the box lying on a designated walkway in such a fashion as to create a tripping hazard; and (4) failed to cause the box's door to be properly closed, with the result that wires from the box came out onto the walkway thereby causing a tripping hazard.

In May 1995, following a trial, the jury returned a verdict against CTC and also allocated fault among plaintiff, CTC, and MTD at 0%, 30%, and 70%, respectively.

## II. ANALYSIS

### A. The Question of CTC's Duty

In an action based on negligence, a plaintiff must establish that the defendant owed the plaintiff a duty, the defendant breached that duty, and the breach proximately caused the plaintiff's injury. *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14, 25, 594 N.E.2d 313, 318 (1992). CTC argues that it owed plaintiff no duty. Plaintiff responds that CTC had a nondelegable duty to close the box's door before leaving the premises. We agree with CTC.

■ The existence of duty is a question of law. *Benner v. Bell*, 236 Ill. App. 3d 761, 764-65, 602 N.E.2d 896, 898 (1992). A duty is a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another. *Benner*, 236 Ill. App. 3d at 765, 602 N.E.2d at 899. To determine whether a duty exists, the trial court should consider the reasonable foreseeability of the injury, the likelihood of injury, the magnitude of the burden of guarding against injury, and the consequences of placing that burden on the defendant. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140-41, 554 N.E.2d 223, 226-27 (1990). Foreseeability means that which it is objectively *reasonable* to expect, not merely what might conceivably occur. *American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320. Moreover, in determining the scope of the defendant's duty, the focus is on the defendant's viewpoint, that is, whether the *defendant* could reasonably foresee the plaintiff's injury. *Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230; *Prochnow v. El Paso Golf Club, Inc.*, 253 Ill. App. 3d 387, 398, 625 N.E.2d 769, 776 (1993).

CTC contends that plaintiff's injuries were not reasonably foreseeable. According to CTC, for negligence to attach in the present case, CTC's employees must have reasonably foreseen that (1) MTD would fail to close the box's door properly after the CTC employees left, (2) a ball of wire approximately 18 inches wide by two to seven inches high would fall out of the box, (3) someone would close the door but leave the ball of wire outside the box, and (4) 17 hours after the CTC employees left the garage, plaintiff would fail to see the ball of wire and trip over it, sustaining serious injuries.

The pertinent facts are not in dispute. CTC employees did not disturb the PA system and its associated wires; when CTC employees completed their work, they left the box's door open; the box's door was shut at the time of plaintiff's accident; and plaintiff and one other witness observed a clump of wire on the sidewalk near the box after plaintiff fell. Defendants do not dispute that this wire originated from the box.

■ Plaintiff's position is that she would not have fallen on February 9, 1993, had CTC's employees personally ensured that the box's door was properly closed before they left on February 8, 1993. When viewing CTC's actions with the relaxed eye of hindsight, one might postulate that CTC employees should have acted differently. But the law does not obligate a person to make what may later prove to be a better decision, only one which a reasonably prudent person would adopt if placed in a similar position. See *Eckel v. O'Keefe*, 254 Ill. App. 3d 702, 708-09, 627 N.E.2d 166, 170 (1993). Based on the record, we conclude that CTC employees could not have reasonably foreseen plaintiff's injuries.

Even assuming that plaintiff's injuries were foreseeable, that alone is not dispositive on the issue of whether the law imposes a duty in negligence. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 445 (1996). The existence of a duty turns on public policy factors as well. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 452-53, 605 N.E.2d 493, 501 (1992).

Consideration of factors other than foreseeability also suggests that no duty should be imposed on CTC under the circumstances of the present case. These factors are the likelihood of the injury, the magnitude of the burden of imposing the duty, and the consequences of such burden. *Bucheleres*, 171 Ill. 2d at 445. Plaintiff's accident was an isolated incident, seemingly unrelated to CTC's act of leaving the box's door open. Plaintiff was not injured by contact with an open door. Plaintiff contends that it would have been fairly easy for CTC to wait until the bus had moved and then close the door. However, in our judgment, holding CTC liable for plaintiff's injuries under the circumstances of this case would burden CTC unreasonably, especially where MTD controlled the circumstances and surroundings for more than 17 hours after the CTC employees left the MTD garage. Thus, we hold that CTC owed plaintiff no duty to have its employees personally shut the box's door.

## B. The Question of Proximate Cause

CTC also argues that the judgment against it should be reversed because, as a matter of law, its conduct in this case was not a proximate cause of plaintiff's injury. We agree.

Questions concerning breach of a duty and proximate cause are ordinarily factual matters for the jury to decide, and a jury determination will not be set aside unless it is clearly not supported by the evidence. *Lee*, 152 Ill. 2d at 454, 605 N.E.2d at 502. They become questions of law only when the facts are undisputed and reasonable persons cannot differ as to inferences to be drawn from those facts. *Benner*, 236 Ill. App. 3d at 766, 602 N.E.2d at 898.

■ The term "proximate cause" describes two distinct requirements: (1) cause in fact, and (2) legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm. *Lee*, 152 Ill. 2d at 455, 605 N.E.2d at 502. Cause in fact can only be established when there is a reasonable certainty that a defendant's acts caused the injury. *Lee*, 152 Ill. 2d at 455, 605 N.E.2d at 502. Liability cannot be premised upon surmise or conjecture as to the injury's cause. *Lee*, 152 Ill. 2d at 455, 605 N.E.2d at 503.

■ In the present case, plaintiff claims she tripped on a clump of wire which originated from the box. Plaintiff did not injure herself because the door was open; in fact, the door was closed when she fell. Between the time the CTC employees left the MTD garage and the time plaintiff fell, several MTD employees used the sidewalk, and none of them recalled seeing wire on the sidewalk. Neither party presented evidence as to who closed the door, when it was closed, how the ball of wire ended up outside the box, or how long the wire remained on the sidewalk outside the box. These unanswered questions require a fact finder to presume, speculate, and infer answers far beyond the scope of "reasonable certainty" required to establish cause in fact. Plaintiff bears the burden of proving negligence. At some point, as here, the mere possibility that a defendant's conduct has caused an injury becomes so slight that it may be disregarded as a matter of law. *Benner*, 236 Ill. App. 3d at 768, 602 N.E.2d at 901. Indeed, as Justice Scalia has written, "[l]ife is too short to pursue every human act to its most remote consequences; 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 287, 117 L. Ed. 2d 532, 556, 112 S. Ct. 1311, 1327 (1992) (Scalia, J., concurring).

Legal cause is essentially a question of foreseeability: a negligent act proximately causes an injury if a reasonable person would see that type of injury as a likely result of his conduct. *Lee*, 152 Ill. 2d at 456, 605 N.E.2d at 503. Thus, an injury will be found to be outside the scope of the defendant's duty if it appears "highly extraordinary" that the breach of the duty should have caused the particular injury. Restatement (Second) of Torts § 435(2), at 449 (1965). The mere fact that CTC employees did not close the box's door fails to support a finding of proximate cause; indeed, the fact that the door *was* closed when plaintiff fell strongly supports the opposite conclusion.

■ Plaintiff's argument seems to be based on *res ipsa loquitur*, namely, that the wire would not have fallen out of the box—and therefore plaintiff would not have been injured—had CTC employees

personally closed the box's door. To prove negligence based upon *res ipsa loquitur*, a plaintiff must show that (1) plaintiff was injured in an occurrence which would not ordinarily occur absent some negligence; (2) by an instrumentality or agency under the management or control of the defendant; and (3) under circumstances indicating that the injury was not the result of an act or omission on the plaintiff's part. *Betts v. Crawshaw*, 248 Ill. App. 3d 735, 739, 618 N.E.2d 1262, 1266 (1993). Had plaintiff relied on *res ipsa loquitur*, her claim would have failed, because CTC never exercised control sufficient to discount third-party intervention. The evidence clearly shows that someone else closed the box door, and no evidence shows that the CTC employees had any involvement with the wire.

At most, the failure of CTC's employees to personally close the box's door furnished a passive condition that did not cause the injury. In *Thompson v. County of Cook*, 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294 (1993), quoting *Briske v. Village of Burnham*, 379 Ill. 193, 199, 39 N.E.2d 976, 979 (1942), the supreme court distinguished between condition and causation as follows:

> " 'The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for causal agencies to act.' If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury."

In the present case, the evidence showed that CTC employees did not disturb the PA system and its wires. They left the door open when they left the MTD garage, and the evidence is undisputed that—many hours later—the door was closed and the ball of wire was on the sidewalk when plaintiff fell. The only possible inference from these facts is that, after CTC employees left, the ball of wire ended up on the sidewalk and someone closed the door after the wire was already on the sidewalk. A defendant's acts do not proximately cause a plaintiff's injuries if the independent act of a third person intervenes between defendant's act and the injury. *Thompson*, 154 Ill. 2d at 383, 609 N.E.2d at 294. Thus, CTC's failure to personally close the box's door did not proximately cause plaintiff's injury.

## III. CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court.

Reversed.

McCULLOUGH and GARMAN, JJ., concur.